ESTATE OF INA M. BEAUDRY, DECEASED, ROBERT W. BEAUDRY, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Beaudry v. Commissioner
Docket No. 13171-79
United States Tax Court
T.C. Memo 1982-691; 1982 Tax Ct. Memo LEXIS 56; 45 T.C.M. (CCH) 224; T.C.M. (RIA) 82691; November 29, 1982. Robert W. Beaudry, pro se. Thomas K. Purcell, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge:* This proceeding for the redetermination of a deficiency in estate tax was submitted fully stipulated pursuant to Rule 122. [1] The stipulation of facts and the exhibits thereto are incorporated herein by this reference. The issue to be determined is whether a promissory note given by the *57 son of decedent is includable in her taxable estate. Ina M. Beaudry (decedent) died on July 14, 1976. Robert W. Beaudry (petitioner) is the personal representative of the estate of Ina M. Beaudry and resided in Sarasota, Florida, at the time the petition waf filed. A United States Estate Tax Return, Form 706, was filed on behalf of petitioner with the Director, Internal Revenue Service Center, Chamblee, Georgia, on April 18, 1977. Respondent issued a notice of deficiency to petitioner on June 15, 1979, which notice set forth a deficiency in estate tax of $25,814.76. Respondent's determination of the deficiency set forth in said notice was based upon inclusion in the gross estate of a value of $39,956.15 for the note receivable presently in issue; increase from the value of $138,200 shown on the return for certain real estate situated in the City of Flint, Michigan; and inclusion of a Federal income tax refund for 1975. Petitioner has now conceded that the Federal *58 income tax return is includable in the gross estate under section 2033. [2]
Arthur C. Beaudry was the husband of decedent and the father of Robert W. Beaudry and Donald A. Beaudry. Prior to his death (in 1969), Arthur Beaudry conducted a business known as A.C. Beaudry, Inc. During 1964 and 1965, Arthur Beaudry made gifts of common stock of A.C. Beaudry, Inc., to Donald Beaudry. On August 27, 1965, Arthur Beaudry and Donald Beaudry entered into an agreement whereby Donald Beaudry agreed to buy the balance of the stock of Arthur Beaudry in A.C. Beaudry, Inc., upon the death of Arthur Beaudry. Article III of said agreement provided as follows: PAYMENT OF PURCHASE PRICE
On or before ninety (90) days after the death of the Seller [Arthur Beaudry], the Purchaser shall deliver to the legal representative of the estate of the Seller his promissory note dated as of the date of delivery in the amount of $52,000.00 which promissory note shall provide monthly payments of Three Hundred ($300.00) Dollars or more per month including *59 interest at the rate of Four (4%) per cent per annum on the unpaid balance, said monthly payments to commence Sixty (60) days from the date of delivery. Arthur Beaudry died on February 11, 1969, and his will was admitted to probate on April 22, 1969. Donald Beaudry was appointed executor of the will. The distribution provisions of the will were as follows: ARTICLE II. I hereby give, devise and bequath all of the rest, residue and remainder of my estate * * * to the Genesee Merchants Bank & Trust Co. * * * as Trustee * * *. A. If my wife, Ina M. Beaudry, shall survive me, the Trustee shall divide my residuary estate into two funds, each of which shall be held and administered as a separate trust: 1. One trust, called "Trust A", shall be an amount equal to obtain the maximum marital deduction * * *. The Trustee shall have the full and unlimited discretion to select and designate the cash, security or other property used to qualify this direction, and the amount and proportion of any particular item to be used * * *. And provided further that there shall not be allocated to Trust A any assets or the proceeds derived from the sale of any assets which do not qualify for *60 the marital deduction. 2. The other trust, called "Trust B", shall be equal in value to the balance of my residuary estate. 3. My Trustee shall pay all of the net income of both Trust A and Trust B to my wife during her lifetime * * * 4. Upon the death of my wife my Trustee shall distribute the balance of Trust A to such person or persons, including my wife's own estate * * * as she appoints and directs by her Last Will and Testament * * *. In default of such appointment, Trust A shall upon the death of my wife be added to and comingled with Trust B and held, or distributed in whole or in part, as if it had been an original part of Trust B. B. Upon the death of my wife or in the eveny my said wife fails to survive me, my Trustee shall distribute Fund B, or the residue of my estate, as the case may be, in the following manner; 1. I forgive the unpaid balance of any indebtedness of my son, Donald A. Beaudry, owing to my Trustee or my Exector as a result of his purchase from my estate of common stock of A.C. Beaudry, Inc., a Michigan corporation. I give and devise to my son, Donald A. Beaudry, real estate situated in the City of Flint, County of Genesee, State of Michigan, *61 and described as follows: 2. My Trustee, or my Executor, shall distribute to my son, Robert W. Beaudry, assets of the trust, or of the residuary estate, having a fair market value at the time of distribution equal in value to the distribution provided in sub-paragraph 1 above of this article for my son, Donald A. Beaudry. 3. The balance of Trust B, or the balance of my residuary estate, as the case may be, shall be distributed equally to my sons, Robert W. Beaudry and Donald A. Beaudry. C. In the event either of my sons, Robert W. Beaudry or Donald A. Beaudry, shall not be living at the time my Trustee, or my Executor, as the case may be, is directed to make distribution to either of them, then instead the share or assets they otherwise would have received shall be distributed to their descendants per stirpes. D. Notwithstanding anything in this instrument to the contrary, if any descendant of a deceased son of nine is under the age of twenty-one years when the Trustee or Executor is directed in the foregoing provisions of this instrument to distribute to him any portion of the principal of the trust property or any portion of the residue of my estate, his portion shall *62 immediately vest in interest in him indefeasibly, but the Trustee shall withhold possession of it and hold it in trust for his benefit until he attains the age of twenty-one years. In the meantime, my Trustee shall use so much of the income and principal for his reasonable support, comfort and education as the Trustee determines to be required for those purposes. Pursuant to the agreement of August 27, 1965, Donald Beaudry purchased the stock and gave his promissory note, dated May 1, 1969, in the amount of $52,000, to the estate of Arthur Beaudry. The note consisted of a printed form with the terms of payment inserted in blanks provided for that purpose. The note did not refer to the agreement pursuant to which it was given or to the will of Arthur Beaudry, but it was payable to "Estate of Arthur C. Beaudry, Deceased, Donald Arthur Beaudry, Executor." On or about October 27, 1969, Donald Beaudry, as executor, filed a petition for an order authorizing partial distribution in the estate of Arthur Beaudry. In that petition, Donald Beaudry asked permission to assign assets of the estate between "marital" Trust A and "residuary" Trust B established under the will of Arthur Beaudry. *63 The petition requested, among other things, that the 38,250 shares of A.C. Beaudry, Inc., stock subject to the buy/sell agreement and the promissory note of Donald Beaudry be assigned to the marital Trust A. The petition was granted, and the assignment of assets to the respective trusts was approved by order of the probate court on November 25, 1969. On June 9, 1970, a receipt of the trustee of the marital and residuary trusts was filed in the probate court, acknowledging receipt by the trustee on December 15, 1969, of assets including the promissory note and the certificate representing the 38,250 shares of stock. Sometime thereafter the trustee prepared an "estate plan" with respect to "A.C. Beaudry Co. Relocation and Financing." That plan referred to the promissory note as an asset of the marital trust. An estate tax return was filed on behalf of the estate of Arthur Beaudry. The promissory note of Donald Beaudry was shown on the return as included in the assets bequeathed to the surviving spouse and eligible for the marital deduction. After audit and certain adjustments, none of which affected the categorization of the promissory note as part of the marital trust, an estate *64 tax closing letter was issued to the estate of Arthur Beaudry on June 18, 1971. Donald Beaudry made payments in accordance with the terms of the promissory note until the death of Ina Beaudry, but made no payments thereafter. The unpaid balance of the note as of the date of death of Ina Beaudry was $39,956.15. On the Federal estate tax return filed on behalf of petitioner, the promissory note was reported on Schedule F, Other Miscellaneous Property, but was shown as having no value. [3] The promissory note was, in effect, treated as a terminable interest with no value as of the date of death. *65 Respondent contends that the note was not a terminable interest because it was assigned to Trust A, and a terminable interest is not eligible for a marital deduction trust. [4] Respondent argues that, because she has a general power of appointment over the remainder interest in marital Trust A established under the will of Arthur Beaudry, Article II, paragraph A, 4, Ina Beaudry had a general power of appointment over the note so as to require its inclusion in her gross estate at the value of $39,956.15. Petitioner contends that the assignment of the note to Trust A was an error on the part of the trustee allocating the assets to the respective trusts, the probate judge who approved the assignment, and the Internal Revenue Service agent who audited the return of the estate of Arthur Beaudry. The error occurred, according to petitioner, because the trustee, the judge, and the revenue agent each successively failed to take *66 into account the forgiveness of the debt when making or approving or not objecting to the assignment of the note to the marital trust, and the provision for forgiveness of the debt made the note a terminable interest. The parties are in agreement as to the law, as well as to most of the facts, but disagree as to the construction to be given the will of Arthur Beaudry. Respondent relies upon the action of the trustee as effectively deciding, by assignment of the note to Trust A, that the note would not be extinguished under the forgiveness clause in the will of Arthur Beaudry, but would be subject to a power of appointment in Ina Beaudry. Respondent contends that the forgiveness clause would be effective only if Ina Beaudry failed to exercise her power of appointment over assets of Trust A, and those assets thus became a part of Trust B. Each party, of course, is in a somewhat awkward position. Petitioner must assert a series of mistakes by the trustee, the probate judge, and the estate tax auditor with respect to the estate of Arthur Beaudry. Respondent is concerned that the value of the note might sequentially escape taxation in the estate of Arthur Beaudry and in the estate *67 of Ina Beaudry. We need not, however, decide responsibility for prior errors, or possible corrections from the standpoint of respondent, with respect to a taxpayer not before the Court in this case. Respondent acknowledges that "the issue involved in this case is primarily factual in that it rests entirely upon the Court's construction of the will of Arthur C. Beaudry and the action of the trustees of two trusts created by that will." We conclude that the will should be construed as urged by petitioner. It is, of course, a rule of construction of wills or other contracts that a writing should be given a meaning that will make it legally operative rather than one that will not. 3 Corbin on Contracts, sec. 532, p. 4 (1960 ed.). Also pertinent here: As between wills and most contracts, there is a marked difference in the rules that determine whose meaning it is for which the court searches and to which legal operation will be given. In the case of a will it is the meaning of the testator and of nobody else. A will is made for the purpose of affecting the disposition of property by *68 stating the desire of the testator. There is only one person whose symbols of expression are to be interpreted and whose meaning is to be given legal operation. The words of a will may convey very different meanings to an heir, to a stranger, and to the court, either before or after a careful process of interpretation. It is the court's meaning that must eventually prevail; but that meaning is the one that the court believes was given to the words of the will by the testator himself and the process of interpretation followed by the court is directed toward the discovery of that meaning. Thus is determined the issue that is before the court; and the field of relevant evidence is correspondingly limited. Corbin, supra; see also . Reviewing the will of Arthur Beaudry and the limited family history in the record, it is unreasonable to conclude that Arthur Beaudry intended that either Ina Beaudry or the trustee could decide whether in fact the note would ultimately be forgiven upon the death of Ina Beaudry. To the lay reader, such as Arthur Beaudry, Article II, paragraph A, deals with provisions for Ina Beaudry *69 during her lifetime, if she survives Arthur Beaudry. Article II, paragraph B, provides for disposition of the remaining estate after the death of Ina Beaudry. Article II, paragraph C. deals with a situation where either of the two sons of Arthur and Ina Beaudry is not living at the time of distribution to them, and paragraph D deals with beneficiaries under age 21. An overall reading of the will, with knowledge of the prior transactions intended to transfer the business of Arthur Beaudry to Donald Beaudry, compels the conclusion that Arthur Beaudry intended that Donald Beaudry pay for the stock, on specified terms, only during the lifetime of Ina Beaudry to provide income for her and that the business be transferred to Donald Beaudry free of the debt upon the death of Ina Beaudry. In addition, the will or Arthur Beaudry carefully provides that both sons shall be treated equally with respect to assets distributed under that will. If either the trustee or Ina Beaudry had the ability to change or modify the effect of the forgiveness provision (such as by forgiving part of the note during her lifetime), there would be less assurance of such equal treatment: If paragraph B, 1, *70 were to be rendered inoperative as to the note by reason of assignment of the note to Trust A, paragraph B, 2, of the will of Arthur Beaudry would become ambiguous. Under respondent's construction, Ina Beaudry would have had the power to substantially alter Arthur Beaudry's equalizing plan. Such a possibility is inconsistent with Arthur Beaudry's intent. Because Arthur Beaudry's intent was not that Ina Beaudry have a power to determine whether the note was or was not forgiven, subsequent conduct of the trustee in assigning the note to Trust A could not give to Ina Beaudry a power of appointment over it. The note had no value in Ina Beaudry's estate. Because of other adjustments, Decision will be entered under Rule 155.
Footnotes
*. By order of the Chief Judge, this case was reassigned from Judge Darrell D. Wiles to Judge Mary Ann Cohen for disposition. ↩
1. All references to Rules are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
3. The stipulation between the parties states that "the promissory note given by Donald A. Beaudry was reported on Schedule F, Item 5, of the [estate tax] return with a value of $0." However, it appears from the return, which is an exhibit to the stipulation, that the 38,250 shares of A.C. Beaudry, Inc., were reported as having a value of $1; accrued interest as of the date of death was shown as $23.61; and a note was added to the schedule stating that "The Promissory Note was payable to the trust and was forgiven upon the death of Ina M. Beaudry pursuant to the terms of the Last Will and Testament of Arthur C. Beaudry."↩
4. This case, of course, arose before the amendment to sec. 2056, applicable to estates of decedents dying after December 31, 1981, providing for qualified terminable interest property. We do not consider here the effect of that subsequent legislation.↩